IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Quentin L. Smith, #252333,     ) | Civil Action No. 6:07-0777-TLW-WMC |
|       ) | |
| Petitioner,      ) | **REPORT OF MAGISTRATE JUDGE** |
|       ) | |
| vs.      ) | |
|       ) | |
| Elaine Pinson, Warden,     ) | |
| Walden Correctional Institution,     ) | |
|       ) | |
| Respondent.     ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND OF THE CASE

The record reveals that the petitioner is currently confined in the Walden Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Greenwood County Clerk of Court. The petitioner was indicted at the May 1998 term of the Greenwood County Grand Jury for first degree burglary, assault with intent to kill and possession of a weapon during the commission of a violent crime (1998-GS-24-962) involving an incident at Shanell McNally's apartment on January 31, 1998. According to the transcript, the underlying facts of that case are as follows.

The petitioner had a history of an on-again/off-again relationship with Shanell McNally which Shanell said ended in November of 1997. The petitioner had no right of access to Shanell's apartment and had no personal items in the apartment at the time of the incident (App. 189, 207, 212-14). Shortly after ending her relationship with the petitioner, Shanell began dating Maurice Canty. Canty was frequently at Shanell's apartment and spent five to seven nights there since the beginning of their relationship (App. 49-51).

The petitioner saw Shanell at a party earlier in the evening on January 30, 1998, and threatened her. Shanell testified that the petitioner said "he was going to get me and him" and called her a "bitch" (App. 57, 60, 193-94, 209, 216-17, 222-23, 228-29, 230). Maurice was in town to see Shanell, having arrived earlier in the evening (App. 54). Following the encounter with the petitioner, Shanell felt nervous when she and Maurice returned to her apartment (App. 61-62, 194, 209). Someone knocked on the window of the front door around 2:15 a.m. and Shanell begged Maurice not to go to the door (App. 62, 64-65, 101-02). Shanell and Maurice went to bed but the petitioner telephoned Shanell. Shanell told the petitioner "don't come down here" (App. 65, 104-05, 197-98).

At approximately 2:45 a.m., someone knocked on the front and then the back door of Shanell's apartment (App. 67-68). According to Maurice, the petitioner kicked the back door to Shanell's apartment, forcing it open. The petitioner then entered the home (App. 68-69, 199-200). This was confirmed by Keilan Livingston, who was with the petitioner that night, and who testified against the petitioner at trial (App. 149-50, 310). It was later determined that the door jamb and the trim around the back door was broken when the petitioner gained entry (App. 74, 240, 253). A muddy footprint was also found on the door (App. 75-76).

The petitioner entered the dark apartment without a word and without turning on any lights. Maurice testified that the petitioner seemed in a "rage." Maurice did not have a weapon but grabbed the petitioner as he walked toward an interior doorway (App. 67-69,

2

78, 109, 119, 208).  Maurice testified that after he grabbed the petitioner, the petitioner "turned around and put a gun in my face" (App. 69).  The petitioner then "pulled the trigger," barely missing Maurice's head (App. 69, 71, 81).  A bullet hole was found in the apartment (App. 87, 113, 266).  Maurice testified that he was certain the petitioner intended to shoot him because the petitioner put the gun in Maurice's face and pulled the trigger (App. 84).

Following a brief scuffle, Maurice threw the petitioner through a doorway and hid in the bathroom with Shanell (App. 69-70, 81).  The petitioner left the apartment but re-entered and proceeded to kick the bathroom door to gain entry.  The petitioner yelled "Where's your faggot boyfriend at now?" (App. 70, 84, 91, 202).  He also turned over items in another room before leaving (App. 71, 124, 202-03).

Before retreating to the bathroom, Maurice saw Keilan Livingston standing outside the back door and asked him about the petitioner's actions.  Livingston told Maurice the petitioner did not want him there with his girl (App. 70, 82, 152-53, 155, 160).  Livingston testified that the petitioner went to Shanell's apartment to find out who was looking for him and saw Maurice's boots outside near the door (App. 146, 149).  Livingston testified that the petitioner expressed disbelief Shanell was with another man and that Shanell had been lying to him.  Livingston described the petitioner as "upset" and "mad" and stated that the petitioner kicked the back door open (App. 153, 155-57, 160, 176).

The petitioner was represented by attorney J. Stephen Welch.  On September 1, 1998, the petitioner proceeded to trial.  At trial, the petitioner denied threatening Shanell at the party (App. 301-03).  He stated that he became suspicious when he called Shanell and she hung up and when Shanell did not answer the door when he knocked (App. 305-07).  The petitioner testified that he took the gun with him because he "thought she might be in trouble or something" and he was concerned about the entire situation (App. 307-08, 323).  The petitioner stated he wanted to talk to Shanell (App. 324).  However, he admitted he saw Maurice's boots in the spot by the back door where the

3

petitioner used to keep his boots and "figured someone, another dude was in there" (App. 309, 312). When the petitioner was asked whether he thought there was any possible threat to Shanell, he responded, "Maybe. I don't know about it" (App. 309) The petitioner admitted that he used his foot to kick open the door and that he entered the apartment with a loaded gun (App. 310, 325-26). He stated that he wanted to talk to Shanell to find out what her problem was, why she hung up on him, and why she did not tell him she was seeing another man (App. 211). The petitioner admitted he still loved her at the time and denied he entered the apartment with the intent to commit a crime and testified he never intended to shoot at Maurice (App. 294, 311, 313). He also admitted he left the apartment through the front door, re-entered through the back door, and approached the bathroom where he thought Shanell and Maurice were hiding (App. 312-13). The petitioner denied he threatened them or beat on the door but merely asked Shanell, "What's up?" (App. 313-14). The petitioner admitted he disposed of the gun after he fled from the apartment (App. 315).

The petitioner was subsequently found guilty of first degree burglary, assault of a high and aggravated nature and possession of a weapon during the commission of a violent crime. He was sentenced by the Honorable James W. Johnson, Jr., to confinement for a period of 17 years for first degree burglary, 10 years for assault of a high and aggravated nature and five years for possession of a weapon during the commission of a violent crime.

A timely notice of appeal was filed on the petitioner's behalf and an appeal was perfected. In the appeal, the petitioner was represented by attorney Tara S. Taggart. In the final brief of appellant, the following issues were raised:

(1)    Whether the trial judge erred in failing to grant a directed verdict where there was no evidence of intent to commit a crime, an essential element of first degree burglary?

(2)    Whether the trial judge erred in failing to grant a directed verdict or a new trial on the conviction for possession of a weapon during the commission of a violent crime, as there was

4

no intent to commit a crime and the possession charge is based on the violent classification of the underlying crime?

(3)    Whether the trial judge erred in failing to grant appellant's motion for a new trial based on documentation that the jury had operated under a complete and inappropriate understanding of its essential duties.

The respondents were represented by Assistant Attorney General Charles Richardson. The South Carolina Court of Appeals affirmed the petitioner's conviction and sentence. *State v. Smith*, Op. No. 2000-UP-655 (S.C. Ct. App. filed October 31, 2000).

The petitioner filed a petition for rehearing on November 15, 2000. The Court of Appeals denied the petition on December 20, 2000.

The petitioner then filed a petition for writ of certiorari in the South Carolina Supreme Court on February 14, 2001. The respondents made a return to the petition on March 13, 2001. The Supreme Court denied his petition by order dated June 20, 2001. The remittitur was sent on June 21, 2001.

On July 10, 2001, the petitioner made a *pro se* application for post-conviction relief, in which he asserted :

I.    Trial counsel was ineffective for failing to preserve applicant's equal protections during trial:

(1)    By not objecting to particulars presented by the state during trial, which would have preserved issues on appeal;

(2)    By allowing the prosecutor to present theatrics before the jury that prejudice the defense and induce the jury to believe the Court had already concluded Applicant's guilt. (Tr.p. 351) ....

(3)    By failing to request supplemental and curative instructions, which improperly shift the burden of proof from the state to the defense....

II.    Trial counsel's deficient assistance allowed the state to abrogate and abridge Applicants Due Process in a manner that

5

rendered Applicant naked of a Cloak of Innocence, thus diluting the Fundamental Fairness. . .

III. Appellate Counsel was ineffective for not pursuing the claims of Applicant's choice, due to the obligation mandating the Appellate counsel present (1) arguable issue.

An evidentiary hearing into the matter was convened on October 7, 2003, at the Laurens County Courthouse before the Honorable Wyatt T. Saunders, Presiding Circuit Judge. The petitioner was present at the hearing and was represented by attorney C. Rauch Wise. The respondent was represented by Salley W. Elliott of the South Carolina Attorney General's Office. At the outset of the hearing counsel made a brief in support of the application. In the brief, he asserted that counsel was ineffective in failing to object to the solicitor's closing argument and the jury instruction on burglary. Stephen Welch, the petitioner's trial attorney, testified at the hearing as did the petitioner. The PCR court also had before it the records of the Greenwood County Clerk of Court regarding the subject convictions, the petitioner's records from the South Carolina Department of Corrections, the trial transcript, the petitioner's appellate records, and briefs submitted by the parties. On January 6, 2004, Judge Saunders entered an order denying the application.

The petitioner, through counsel Wise, made an appeal from the denial. On October 25, 2004, the petitioner made a petition for writ of certiorari pursuant to Rule 227. In the petition and subsequent brief of petitioner, the following questions are presented:

(1)     Did the post-conviction relief judge err in failing to grant a new trial when the prosecuting attorney improperly told the jury that the trial judge had "made the decision as a judge that the evidence supports the conviction" and defense counsel failed to make an objection?

(2)     Did the post-conviction relief judge err in failing to find defense counsel ineffective for not objecting to the charge that said "proof of intent necessarily rests on inference from conduct"?

6

The respondents made a return on February 28, 2005. On March 18, 2006, the Supreme Court of South Carolina entered an order granting certiorari and directing briefing. The brief of petitioner was filed on April 3, 2006. The respondents' brief was filed on August 6, 2006. A reply brief was filed on August 21, 2006. On January 16, 2007, the South Carolina Supreme Court entered its order concluding that certiorari was improvidently granted. The remittitur was entered on February 1, 2007.

In his petition now before this court, the petitioner makes the following allegations as to why he is being held in custody unlawfully (verbatim):

> (1)    Petitioner assert that the post-conviction relief [judge] erred in failing to grant a new trial prosecuting attorney told the jury that the trial judge had "made the decision as a judge that the evidence supports the conviction" and defense counsel failed to make an objection?
>
> (2)    Petitioner asserts that the post-conviction relief judge erred in failing to find defense counsel ineffective for not objecting to the charge that said "proof of intent necessarily rests on inference from conduct"?
>
> (3)    Petitioner asserts that the courts erred in holding that Petitioner was not entitled to a directed verdict (on burglary). In his pleading, Petitioner asserts that the was no proof of an intent to commit a crime, an essential element of burglary.
>
> (4)    The court erred in holding the Petitioner failed to show prejudice based upon jury misconduct.
>
> > Jurors Calvin White and Ella Harper swore under oath that they had been told and believed that they all had to agree or they would not leave the jury room. . . .

On July 23, 2007, the respondent filed a motion for summary judgment. By order filed July 25, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The petitioner filed his opposition to the motion on August 24, 2007.

7

## APPLICABLE LAW

Title 28, United States Code, Section 2254(d) and (e) provides in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

## ANALYSIS

*Ground One*

In ground one, the petitioner alleges that the PCR judge erred in failing to grant a new trial when the prosecuting attorney improperly told the jury that the trial judge "made the decision as a judge that the evidence supports the conviction" and trial counsel failed to object. The respondents argue that the state PCR judge properly applied *Strickland v. Washington,* 466 U.S. 668 (1984), in denying relief on this ground. Claims of ineffective assistance of counsel are governed by the two-part test established in *Strickland*. First, the petitioner "must show that counsel's performance was deficient." *Id.* at 687. To prove deficiency, the petitioner "must show that counsel's representation fell below an objective

8

standard of reasonableness." *Id.* at 688. Second, the petitioner must show that the deficient performance actually prejudiced him, *i.e.* "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Finally, the Court in *Strickland* held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies," and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697. Review of counsel's performance is "highly deferential." *Id.* at 689.

The relevant question in analyzing a claim for prosecutorial misconduct on habeas review is "whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). To satisfy this standard, the conduct must be both improper and flagrant. *Broom v. Mitchell,* 441 F.3d 392, 412 (6th Cir.2006) (citing *Bates v. Bell,* 402 F.3d 635, 641 (6th Cir.)). Conduct is improper if made "to incite the passions and prejudices of the jurors...." *United States v. Solivan,* 937 F.2d 1146, 1151 (6th Cir.1991). If conduct is found to be improper, four factors are then considered to determine flagrancy:  "(1) the likelihood that the remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) the total strength of the evidence against the defendant." *Bates,* 402 F.3d. at 641.

As argued by the respondent, in a trial of any size, numerous potentially objectionable events occur.  The Constitution "does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac,* 456 U.S. 107, 134 (1982).

> Any single failure to object usually cannot be said to have been
> error unless the evidence sought is so prejudicial to a client that
> failure to object essentially defaults the case to the state.
> Otherwise, defense counsel must so consistently fail to use

9

> objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *See Hodge v. Hurley,* 426 F.3d 368, 376 (6th Cir.2005) ("[C]ounsel's failure to object to *any* of the numerous improper statements in the prosecution's closing argument is well outside [professional norms].").

*Durr v. Mitchell* , 487 F.3d 423, 439 (6th Cir. 2007).

The record before this court reflects the prosecutor's summation to the jury was bifurcated, with the prosecutor providing an initial opening summation on the law, followed by the petitioner's trial attorney's jury argument, and with the prosecutor concluding with his argument on the facts and evidence (App. 338-39; 340-54; 364-75). Before the closing arguments were presented to the jury, the trial court charged the jury that argument presented by counsel could not be considered as testimony (App. 339).

The prosecutor began his initial summation on the law by stating that "it's just opening statement on the law. It is not meant to be argument" (App. 340). The prosecutor thereafter reviewed the indictments, charges contained in the indictments, and law respecting those charges (App. 340). The prosecutor further stated:

> The judge will explain the definition of assault and give you an understanding of what this term assault means. As he reads it through, his instructions to you about assault with intent to kill and assault of a high and aggravated nature, listen . . . as he explains what the assault principle means.
> * * *
> And you know, ladies and gentlemen, assault with intent to kill, which is the other count and I think I also mentioned to you the judge will charge the lesser charge, assault of a high and aggravated nature.

(App. 345-48). Also during this initial summation, the prosecutor made the following statement, which is at issue in this ground:

> I submit, and of course the judge, far, far wiser that he's made – *he's made the decision as a judge that the evidence supports the charge.* It is still your decision to acquit or convict. He's not suggesting that. He's saying I'm charging you the law of assault

10

> of a high and aggravated nature. He's permitting you to consider evidence to support that charge for assault with intent to kill.

(App. 351) (emphasis added).    The petitioner's trial counsel made no objection to the comment.  The prosecutor then stated as follows:

> Additionally ladies and gentlemen, there is one additional charge. Now assault of a high and aggravated nature, that, ladies and gentlemen, is the use of a weapon done in a way that has a capability of projecting an injury onto another human being. Notice the only difference is assault of a high and aggravated nature does not have the element of malice. . . . I'm saying to you if you find that there was some sort of provocation or reduction from this intent to kill with malice down to assault of a high and aggravated nature that is for you to judge. That is for you to decide as much as it is to find him guilty of any charge. It is all within your province. . . .

(App. 352-53).  The prosecutor concluded his initial summation on the law by stating, "[S]o those are the elements of the charges that you will receive. The charge of burglary first degree, assault with intent to kill and assault of a high and aggravated nature. I've also tried to give you some general idea of what assault is so that you will understand that general principle . . . ." (App. 353-54).  Following the prosecutor's initial summation, the petitioner's trial counsel argued and then the prosecutor presented his closing argument on the facts (App.  354-75).

Following the closing arguments, the trial judge charged the jury that it was the jury's "exclusive duty to decide all of the issues of fact in this case" (App. 375).  The trial judge also charged the jury that it is the judge's duty to rule on the admissibility of evidence offered during trial and to charge the jury on the law in the case (App. 382).  The trial court charged the jury on presumption of innocence, the State's burden of proof, and the law pertaining to first degree burglary, assault with intent to kill, as well as assault of a high and aggravated nature as a lesser included offense (App. 378-81).  Further, the trial judge instructed the jury that the trial judge is not permitted by the law to have an opinion on the facts of the case.  The trial court specifically charged:

11

> In every case that is tried in this court before a jury, the jury does become the sole and exclusive judge of the facts in this case. The court is the judge of the law in this case. The Constitution of the State has declared that a trial judge shall not intimate, state, comment upon any statement to the trial jury about the facts in a case. Since you are the sole judges about the facts in this case, you are not to infer from anything that I said . . . that I have any opinion as to the facts of the case. The law does not permit me to have an opinion as to the facts of the case. This is a matter solely for you the jury to determine.

(App. 383). The jury returned a verdict of guilty on the charges of burglary in the first degree, assault of a high and aggravated nature, and possession of a firearm during the commission of a violent crime (App. 403).

At the PCR hearing, the petitioner's trial counsel testified in pertinent part as follows:

> I can tell you that I did not make a tactical decision here that it would be best not to object.  I probably should have objected.
>
> If you look at it in the context of what the Solicitor was saying before and after, and the Solicitor right after that goes on to try and say that it is still your decision to acquit or convict, but I'm not sure that would be good enough.
>
> You know, Solicitor Woolston sometimes can get into a sort of a, I hate to say a sing-song cadence in his closing, or not really a monotone buts sometimes kind of close to it, and I don't know if that sentence - I probably would have objected if I had listened or listened to that clearly. To say that I submit that the judge is far, far wiser, that he's made . . . a decision as a judge that the evidence supports the charge, I don't know what I was thinking on that.

(App. 435-36). The PCR judge found:

> The comment in question was a single, isolated statement made in the context of explaining to the jury it would be presented with more than one assault offense to consider.  The solicitor immediately argued that the decision whether to acquit or convict belonged to the jury. (Tr. p. 351, line 4). Furthermore, the trial judge cured any possible impropriety in the solicitor's comment with his charge to the jury as set forth above, Clearly, the trial judge conveyed to the jury that it was their exclusive duty to decide issues of fact and to determine the weight, value

12

and truth of the evidence. (Tr. p. 375, lines 19-22). Additionally, the evidence of the Applicant's guilt was overwhelming.

This Court finds the Applicant has not shown that the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Because the Applicant cannot show prejudice from his trial attorney's failure to object to the solicitor's comment, he has failed to meet his burden of proving he received ineffective assistance of counsel as to this allegation.

(App. 452).

This court agrees with the respondent that the PCR court reasonably concluded that the prosecutor's statement did not reach the level of "so infecting[ing] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181. Viewing the comment in the context of the entire record, it appears that the prosecutor was explaining to the jury that it would receive a charge on the law respecting a lesser included assault offense, that of assault of a high and aggravated nature (App. 351). Immediately following the statement, the prosecutor said, "It is still your decision to acquit or convict. He's not suggesting that. He's saying I'm charging you the law of assault of a high and aggravated nature. He's permitting you to consider evidence to support that charge for assault with intent to kill" (App. 351).

Furthermore, the PCR court was correct in finding the petitioner failed to show the requisite prejudice to support a finding of ineffective assistance of counsel for his trial counsel's failure to object to the comment. The record reflects that the comment was made during the prosecutor's opening on the law, rather than in the argument on facts and evidence. The trial court specifically charged the jury before closing arguments that argument of counsel could not be considered evidence (App. 339-40). After closing arguments by the attorneys, the trial judge specifically charged the jury that it was the jury's "exclusive duty to decide all of the issues of fact in this case" (App. 375). The trial judge also charged the jury that it is the judge's duty to rule on the admissibility of evidence offered

13

during trial and to charge the jury on the law in the case (App. 382). The trial court charged the jury on presumption of innocence, the State's burden of proof, and the law pertaining to first degree burglary, assault with intent to kill, as well as assault of a high and aggravated nature as a lesser included offense (App. 378-81). The trial judge also instructed the jury that the trial judge is not permitted by the law to have an opinion on the facts of the case and the jury was "not to infer from anything that [he] said" (App. 383). The trial judge cured any possible impropriety in the comment with the above jury charges.

Additionally weighing against any showing of prejudice is the overwhelming evidence of the petitioner's guilt. The petitioner had a history of an on-again/off-again relationship with Shanell McNally, which Shanell said ended in November of 1997. The petitioner had no right of access to her apartment and had no personal items in the apartment at the time of the incident. At the time of the incident, Shanell had begun dating another man, Maurice Canty. The petitioner saw Shanell at a party earlier in the evening on January 30, 1998, and threatened her. Shanell testified that the petitioner said "he was going to get me and him" and called her a "bitch." Later that night, someone knocked on the window of Shanell's front door. Later, the petitioner called Shanell, and she told him "don't come down here." At approximately 2:45 a.m. someone knocked on the front and then the back door of Shanell's apartment. According to Maurice Canty, the petitioner kicked the back door to Shanell's apartment forcing it open, and the petitioner entered the home. It was later determined that the door jamb and the trim around the back door was broken when the petitioner gained entry. A muddy footprint was also found on the door. The petitioner entered the dark apartment without a word and without turning on any lights. Maurice testified that the petitioner seemed in a "rage." Maurice, who did not have a weapon, grabbed the petitioner as the petitioner walked toward an interior doorway. Maurice testified that after he grabbed the petitioner, the petitioner "turned around and put a gun in my face." The petitioner then "pulled the trigger," barely missing Maurice's head. A bullet hole was found

14

in the apartment.  The petitioner left the apartment, but reappeared moments later at the door to the bathroom where Maurice and Shanell were hiding.  He kicked the bathroom door, yelled threatening comments, and knocked over items before leaving.  The petitioner admitted he used his foot to kick open the door and that he entered the apartment with a loaded gun.  He also admitted he disposed of the gun after he fled from the apartment.

Based upon the foregoing, the petitioner has not shown that the state PCR judge's denial of relief was contrary to or  involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Accordingly, this claim fails.

**Ground Two**

In ground two, the petitioner alleges that the portion of the trial judge's jury charge stating that "proof of intent necessarily rests on inferences from conduct" was erroneous and that defense counsel provided ineffective assistance when counsel failed to object to the charge.  The respondent argues that the PCR court's finding that there was no error in the trial court's charge to the jury and trial counsel's conduct respecting the charge was neither deficient nor prejudicial is supported by the record (App.  452-453).

In charging the jury on the law regarding burglary, the trial court instructed in pertinent part,  "The mere entry into a dwelling house without consent is not a violation of the burglary statute.  It is only where there is an intent to commit a crime whether it be a felony or a misdemeanor, that the crime is complete. *Proof of intent necessarily rests on inferences from conduct*" (App. 388-89) (emphasis added).  The petitioner's trial counsel did not object to the charge.

At the PCR hearing below, the petitioner challenged this jury charge on the ground it "puts too much emphasis on conduct as opposed to actual intent" and that the trial

15

judge should have charged that "proof of intent *may* rest on the inference from conduct" (App. 419) (emphasis added). The petitioner's trial counsel was asked to review the instruction and reveal his basis for not objecting (App. 436-37). He stated that reading the instruction as a whole in context was not error. *Id.* However, counsel declared that he could not tell what he was thinking at the time of the trial (App. 438-39).

To the extent the petitioner now argues that the charge constitutes a charge on the facts, that issue is not properly before the court as it was not raised nor ruled upon below. With regard to the petitioner's claim that the charge puts too much emphasis on conduct as opposed to actual intent and uses the word *necessarily* rather than *may*, the respondent argues that the charge is taken directly from case law and constitutes a correct charge on the law. *See State v. Pinckney*, 529 S.E.2d 526, 527 (S.C. 2000) (defendant's actions after entering house can be evidence of intent to commit a crime of burglary); *State v. Hayes*, 250 S.E.2d 342, 343 (S.C. 1979) ("As we stated in *State v. Haney*. . . '[a]bsent an admission by the defendant, proof of intent necessarily rests on inference from conduct.'"); *State v. Lambert*, 225 S.E.2d 340, 342 (S.C. 1976) ("Under these circumstances, the inference of intent to enter and steal was present as '[p]roof intent necessarily rests on inference rom conduct.'"); *State v. Haney*, 184 S.E.2d 344, 345 (S.C. 1971) ("Absent an admission by the defendant, proof of intent necessarily rests on inference from conduct. When the building unit is a dwelling house, the weight of authority holds that the unexplained breaking and entering into the night is itself evidence of intent to commit burglary . . . .").

The respondent further argues that the petitioner was not prejudiced by the charge as, assuming *arguendo* that the instruction was improper, the trial judge repeatedly charged on the presumption of innocence and the State's burden of proof beyond a reasonable doubt (App. 28, 378-81, 400). Further, the respondent argues that the evidence of the petitioner's intent was overwhelming, and thus any error in the charge was harmless.

16

Based upon the foregoing, this court finds that the petitioner has not shown that the PCR court's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, the claim fails.

**Ground Three**

In ground three, the petitioner alleges that the trial judge erred in holding that he was not entitled to a directed verdict on the first degree burglary charge. The petitioner contends that there was no proof of an intent to commit a crime, an essential element of burglary. The petitioner contends that the fact the jury asked to be recharged on the law of first degree burglary shows the jury was struggling with the lack of intent to commit a crime (App. 397-401).

First degree burglary requires that a person enter a dwelling without consent, with the intent to commit a crime therein, in addition to an aggravating circumstance, which may include that he or his accomplice be armed with a deadly weapon upon entering the dwelling, while inside the dwelling, or immediately fleeing from the dwelling. S.C. Code Ann. § 16-11-311(A)(1)(a).

"'Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is 'sharply limited.'" *Wilson v. Greene*, 155 F.3d 396, 405 (4th Cir. 1998) (citing *Wright v. West*, 505 U.S. 277, 296 (1992)). Federal review of the sufficiency of the evidence to support a petitioner's state court conviction is not meant "to consider anew the jury's determination of guilt or to replace the State's system of direct appellate review." *Id.* at 405-06. *See also Wright*, 505 U.S. at 292. Therefore, a defendant is entitled to review only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted); *George*

17

*v. Angelone*, 100 F.3d 353, 357 (4th Cir. 1996). The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. Also, a federal reviewing court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982). Further, "under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). *See also Jackson*, 443 U.S. at 318-319 ("[T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'"). Finally, when faced with evidence that allows conflicting inferences, this court must presume that the jury resolved such conflicts in the State's favor. *Jackson*, 443 U.S. at 326.

On direct appeal, the South Carolina Court of Appeals applied the *Jackson* standard and found as follows:

> There was enough evidence on each element of first degree burglary for the trial judge to deny Smith a directed verdict. He admitted he forced the back door of McNally's home open and entered the apartment. He also admitted he was carrying a loaded gun when he entered her home. The State offered substantial evidence that Smith intended to commit a crime once inside McNally's home . The State introduced evidence that Smith threatened McNally and Canty earlier in the evening and that once Smith was inside McNally's apartment he did not turn on any lights. Evidence was also introduced that Smith fired his gun inside the home and tried to break into the bathroom where McNally and Canty were hiding, while yelling at them. Viewing all this evidence in the light most favorable to the state, we find that a rational trier of fact could have found beyond a reasonable doubt the essential elements of first degree burglary proven beyond a reasonable doubt.

*State v. Smith*, No. 2000-UP-655, at 3.

This court finds that the state court's application of *Jackson* was proper. The petitioner has failed to show that the state court's decision was contrary to or involved an

18

unreasonable application of *Jackson* or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Accordingly, the claim fails.

### Ground Four

In ground four, the petitioner alleges that the trial judge erred in failing to grant his motion for a new trial based on affidavits from two jurors who stated they misunderstood the proceedings. Juror White stated in his affidavit that he did not believe the petitioner intended to commit a crime, that he was uncertain as to the meaning of the terms provided, and that he thought that all of the jurors had to agree to a verdict before they could leave the jury room (App. 446-47). Juror Harper stated that she did not think the petitioner intended to commit his crime, that he was not a "menace to society" and had learned from his crime. She also stated that she thought all jurors had to agree before they could be released (App. 445).

In denying appellate relief, the South Carolina Court of Appeals cited *State v. Hunter*, 463 S.E.2d 314, 316 (S.C. 1995) (holding that juror testimony is competent only in cases involving internal misconduct where necessary to ensure fundamental fairness and noting that normally courts should not intrude into the privacy of the jury room to scrutinize how jurors reach their verdict and that generally juror testimony is inadmissible to impeach a jury verdict) and *State v. Kelly*, 502 S.E.2d 99, 104 (S.C. 1998) (holding that a trial court has broad discretion in assessing allegations of juror misconduct and the burden is on the defendant to demonstrate prejudice). The appellate court in the petitioner's case found as follows:

> Smith has not shown juror misconduct denied him a fair trial. The trial judge instructed the jury that whatever verdict it returned was to be unanimous. He also instructed the jury that if it had any questions , he would answer them. The jury never asked that court any questions about the unanimity of the verdict

19

or the length of Smith's sentence. After pronouncing the verdict, the jurors were polled . All jurors, including the two jurors providing affidavits, responded affirmatively when asked if the verdict read "was and still is" their verdict. Accordingly, we do not find the trial court abused his discretion in denying Smith a new trial based on the jurors affidavits.

*State v. Smith*, No. 2000-UP-655, at 4-5.

South Carolina Rule of Evidence 606(b) provides:

**(b) Inquiry Into Validity of Verdict or Indictment.**
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

As explained in *Tanner v. United States*, 483 U.S. 107 (1987), which dealt with the construction of Federal Rule of Evidence 606(b), which is identical to the referenced South Carolina rule:

Let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation. . . .

*Id.* at 119-20 (quoting *McDonald v. Pless*, 238 U.S. 264, 267-68 (1915)). In *Tanner*, the court stated that "Federal Rule of Evidence 606(b) is grounded in the common-law rule

20

against admission of jury testimony to impeach a verdict and the exception for jury testimony relating to extraneous influences."  483 U.S. at 121.

As noted above, the court in *State v. Hunter*, 463 S.E.2d 314, 316 (S.C. 1995), found that juror testimony concerning internal jury misconduct may be admitted if necessary in order to ensure due process or fundamental fairness.  In *Hunter*, it was determined that racial prejudice among jurors constituted a denial of due process.  *Id.*  In *State v. Aldret*, 509 S.E.2d 811 (S.C. 1999), the South Carolina Supreme Court determined that the juror misconduct in that instance, premature deliberation by the jury, also involved a matter of fundamental fairness.  *Id.* at 813.  In the instant case, the juror's allegations did not fall under any exception involving a denial of fundamental fairness or due process.  Further, the respondent cites several cases in which courts have determined that jurors should not be allowed to testify as to whether they or other jurors misinterpreted jury instructions.  *See United States v. Arditti*, 955 F.2d 331, 342 (5th Cir. 1992); *United States v. Neary*, 552 F.2d 1184, 1190 (7th Cir. 1976); *State v. Domabyl*, 272 N.W.2d 745, 746-47 (Minn. 1978).

This court agrees with the respondent that the state court's decision was not an unreasonable application of *Tanner v. United States*, 483 U.S. 107 (1987).  Here, no external misconduct by the jurors is claimed.  As explained by the Fourth Circuit Court of Appeals in *Robinson v. Polk*, 438 F.3d 350 (4th Cir. 2006):

> The Sixth Amendment provides, in relevant part, that "the accused shall enjoy the right to a ... trial[ ] by an impartial jury ... [and to] be confronted with the witnesses against him." U.S. Const. amend VI. The right to trial by an impartial jury "guarantees ... a fair trial by a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722(1961).
> ***
> Despite these venerable protections afforded to criminal defendants, the Sixth Amendment does not require that all evidence introduced by the defendant tending to impeach the jury's verdict be considered by the courts. *See Tanner v. United States*, 483 U.S. 107, 117 (1987). In fact, the common-law rule generally "prohibited the admission of juror testimony to impeach a jury verdict." *Id.* at 117.

21

> \*\*\*
> Like the common law, the Federal Rules of Evidence and the North Carolina Rules of Evidence contain an exception to this general rule when "extraneous prejudicial information" is improperly brought to the jury's attention or when an "outside influence [is] improperly brought to bear upon any juror." Fed.R.Evid. 606(b); N.C. Gen.Stat. § 8C-1, Rule 606(b) (2003); see also *Tanner*, 483 U.S. at 117 (describing exceptions to the common-law rule excluding juror testimony).
> \*\*\*
> *Tanner* thus establishes that the Sixth Amendment's guarantees do not require judicial consideration of juror allegations regarding influences internal to the deliberation process. Under clearly established Supreme Court case law, an influence is not an internal one if it (1) is extraneous prejudicial information; i.e., information that was not admitted into evidence but nevertheless bears on a fact at issue in the case, *see Parker*, 385 U.S. at 364; *Turner*, 379 U.S. at 473, or (2) is an outside influence upon the partiality of the jury, such as "private communication, contact, or tampering ... with a juror," *Remmer*, 347 U.S. at 229.

*Id.* at 359-63 (parallel citations omitted).

The petitioner has not shown that the state court's denial of relief was contrary to or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Based upon the foregoing, the allegation fails.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

January 29, 2008

Greenville, South Carolina

22